UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

MICHAEL OWEN NEWSOME,

                    Petitioner,

v.                                 Case No. 3:11-cv-74-J-34JRK

SECRETARY, FLORIDA
DEPARTMENT OF CORRECTIONS,
et al.,

                    Respondents.

_____

### ORDER

### I. Status

Petitioner Michael Owen Newsome, an inmate of the Florida penal system, initiated this action by filing a pro se Memorandum of Law in Support of Petition for Writ of Habeas Corpus (Doc. #1) on January 13, 2011, pursuant to the mailbox rule, followed by a Petition for Writ of Habeas Corpus (Petition) (Doc. #8) under 28 U.S.C. § 2254 with exhibits (Pet. Ex.).  Newsome challenges a 2006 state court (Duval County, Florida) judgment of conviction for two counts of sexual battery upon a child by a person in familial or custodial authority.  Respondents submitted a memorandum in opposition to the Petition on January 10, 2012. See Respondents'

Answer to Petition for Writ of Habeas Corpus (Response) (Doc. #17) with exhibits (Resp. Ex.).  On May 4, 2011, the Court entered an Order to Show Cause and Notice to Petitioner (Doc. #10), admonishing Newsome regarding his obligations and giving Newsome a time frame in which to submit a reply.  Newsome submitted a brief in reply on April 11, 2012.  See Petitioner's Reply to Respondents' Answer to Petition for Writ of Habeas Corpus (Doc. #19).  This case is ripe for review.

## II. Procedural History

On March 10, 2005, the State of Florida charged Newsome with two counts of sexual battery of a child twelve years of age or older, but less than eighteen, by a person in familial or custodial authority.  Resp. Ex. 7, Amended Information.  At the conclusion of trial in March 2006, a jury found Newsome guilty on each count, as charged.  Resp. Exs. 8, Transcript of the Jury Trial (Tr.) at 651-52; 9, Verdicts.  On May 11, 2006, the court sentenced Newsome to a term of twenty years of imprisonment for count one, and a term of twenty years of imprisonment for count two, both such terms to run concurrently, to be followed by three years of sex offender probation.  Resp. Ex. 12, Judgment.

On appeal, Newsome, through counsel, filed an Amended Initial Brief, arguing that the trial court erred when it: admonished him in front of the jury for answering a question presented by the court on behalf of a juror (ground one), and denied his motion for

2

new trial (ground two).  Resp. Ex. 14.  The State filed an Answer Brief.  See Resp. Ex. 15. On November 2, 2007, the appellate court affirmed Newsome's conviction and sentence per curiam without issuing a written opinion, see Newsome v. State, 967 So.2d 912 (Fla. 1st DCA 2007); Resp. Ex. 16, and the mandate issued on November 20, 2007.[1]  Newsome did not seek review in the United States Supreme Court.

On July 16, 2008, Newsome filed a pro se motion for post conviction relief pursuant to Florida Rule of Criminal Procedure 3.850 (Rule 3.850 motion).  Resp. Ex. 17.  In the request for post conviction relief, Newsome asserted that defense counsel were ineffective because they failed to move to: dismiss the Amended Information (ground one); sever the charges (ground two); and suppress his pre-Miranda[2] statements (ground three).  Additionally, he alleged that counsel failed to object to: the Assistant State Attorney testifying at trial (ground four); the improper statements of the State's expert witness (ground five); admission of the details of his prior arrest (ground six); the trial court's admission of collateral crime evidence (ground seven); and prosecutorial misconduct (ground nine).  Finally, he argued that counsel failed to timely obtain and present evidence at trial to

---

[1] Online docket, Michael O. Newsome v. State of Florida, Case No. 1D06-2932, website for the First District Court of Appeal (http://www.1dca.org).

[2] Miranda v. Arizona, 384 U.S. 436 (1966).

substantiate an alibi defense (ground eight).  On January 4, 2010, the circuit court denied the Rule 3.850 motion.  Resp. Ex. 18.  On appeal, Newsome filed a <u>pro se</u> brief, <u>see</u> Resp. Ex. 20, and the State notified the court that it did not intend to file an answer brief, <u>see</u> Resp. Ex. 21.  On May 3, 2010, the appellate court affirmed the trial court's denial per curiam, <u>see</u> <u>Newsome v. State</u>, 36 So.3d 89 (Fla. 1st DCA 2010); Resp. Ex. 22, and the mandate issued on July 23, 2010, <u>see</u> Resp. Ex. 22.

During the pendency of the Rule 3.850 motion, Newsome filed a <u>pro se</u> petition for writ of habeas corpus, <u>see</u> Resp. Ex. 23, and later amended the petition on December 22, 2008, <u>see</u> Resp. Ex. 24. In the amended petition, Newsome asserted that appellate counsel was ineffective because she failed to raise the following issue on direct appeal: the trial court lacked jurisdiction to try him on the re-filed Information after the charges had been dismissed with prejudice. The State responded, <u>see</u> Resp. Ex. 25, and Newsome replied, <u>see</u> Resp. Exs. 26; 27.  On August 6, 2009, the appellate court denied the amended petition, <u>see</u> <u>Newsome v. State</u>, 18 So.3d 1102 (Fla. 1st DCA 2009); Resp. Ex. 28, and later denied Newsome's motion for rehearing on October 1, 2009, <u>see</u> Resp. Ex. 29.

### III. One-Year Limitations Period

The Petition is timely filed within the one-year limitations period.  <u>See</u> 28 U.S.C. § 2244(d); Response at 5.

## IV. Evidentiary Hearing

"In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." Schriro v. Landrigan, 550 U.S. 465, 474 (2007) (citation omitted). "It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." Id. The pertinent facts of this case are fully developed in the record before the Court. Because this Court can "adequately assess [Petitioner's] claim[s] without further factual development," Turner v. Crosby, 339 F.3d 1247, 1275 (11th Cir. 2003), cert. denied, 541 U.S. 1034 (2004), an evidentiary hearing will not be conducted.

## V. Standard of Review

The Court will analyze Newsome's claims under 28 U.S.C. § 2254(d). This standard is described as follows:

> As explained by the Supreme Court, the phrase "'clearly established Federal law' . . . refers to the holdings . . . of [the Supreme Court's] decisions as of the time of the relevant state-court decision." Williams v. Taylor, 529 U.S. 362, 412, 120 S.Ct. 1495, 1523, 146 L.Ed.2d 389 (2000). We have held that to be "contrary to" clearly established federal law, the state court must either (1) apply a rule "that contradicts the governing law set forth by Supreme Court case law," or (2) reach a different result from the

5

Supreme Court "when faced with materially indistinguishable facts." Putman v. Head, 268 F.3d 1223, 1241 (11th Cir. 2003).

As regards the "unreasonable application" prong of § 2254(d)(1), we have held as follows:

> A state court decision is an unreasonable application of clearly established law if the state court unreasonably extends or fails to extend a clearly established legal principle to a new context. An application of federal law cannot be considered unreasonable merely because it is, in our judgment, incorrect or erroneous; a state court decision must also be unreasonable. Questions of law and mixed questions of law and fact are reviewed de novo, as is the district court's conclusion regarding the reasonableness of the state court's application of federal law.

Jennings v. McDonough, 490 F.3d 1230, 1236 (11th Cir. 2007) (quotation marks and citations omitted). In sum, "a federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." Williams, 529 U.S. at 409, 120 S.Ct. at 1521. Finally, 28 U.S.C. § 2254(e)(1) commands that for a writ to issue because the state court made an "unreasonable determination of the facts," the petitioner must rebut "the presumption of correctness [of a state court's factual findings] by clear and convincing evidence."[3] 28 U.S.C. § 2254(e)(1).

---

[3] "This presumption of correctness applies equally to factual determinations made by state trial and appellate courts." Bui v. Haley, 321 F.3d 1304, 1312 (11th Cir. 2003) (footnote omitted) (citing Sumner v. Mata, 449 U.S. 539, 547 (1981)).

Ward, 592 F.3d at 1155-56.

Finally, for a state court's resolution of a claim to be an adjudication on the merits, so that the state court's determination will be entitled to deference for purposes of federal habeas corpus review under AEDPA, all that is required is a rejection of the claim on the merits, not an opinion that explains the state court's rationale for such a ruling. Harrington v. Richter, 131 S.Ct. 770, 785 (2011) (holding that section 2254(d) does not require a state court to give reasons before its decision can be deemed to have been adjudicated on the merits); Wright v. Sec'y for the Dep't of Corr., 278 F.3d 1245, 1255 (11th Cir. 2002). Thus, to the extent that Newsome's claims were adjudicated on the merits in the state courts, they must be evaluated under § 2254(d).

## VI. Ineffective Assistance of Counsel

"The Sixth Amendment guarantees criminal defendants effective assistance of counsel. That right is denied when a defense counsel's performance falls below an objective standard of reasonableness and thereby prejudices the defense." Yarborough v. Gentry, 540 U.S. 1, 5 (2003) (per curiam) (citing Wiggins v. Smith, 539 U.S. 510, 521 (2003), and Strickland v. Washington, 466 U.S. 668, 687 (1984)).

> To establish deficient performance, a person challenging a conviction must show that "counsel's representation fell below an objective standard of reasonableness." [Strickland,] 466 U.S. at 688, 104 S.Ct. 2052. A court considering a claim of ineffective

assistance must apply a "strong presumption" that counsel's representation was within the "wide range" of reasonable professional assistance. <u>Id</u>., at 689, 104 S.Ct. 2052. The challenger's burden is to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." <u>Id</u>., at 687, 104 S.Ct. 2052.

With respect to prejudice, a challenger must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." <u>Id</u>., at 694, 104 S.Ct. 2052. It is not enough "to show that the errors had some conceivable effect on the outcome of the proceeding." <u>Id</u>., at 693, 104 S.Ct. 2052. Counsel's errors must be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." <u>Id</u>., at 687, 104 S.Ct. 2052.

<u>Harrington</u>, 131 S.Ct. at 787-88.

Since both prongs of the two-part <u>Strickland</u> test must be satisfied to show a Sixth Amendment violation, "a court need not address the performance prong if the petitioner cannot meet the prejudice prong, and vice-versa." <u>Ward</u>, 592 F.3d at 1163 (citation omitted). "Surmounting <u>Strickland</u>'s high bar is never an easy task." <u>Harrington</u>, 131 S.Ct. at 788 (quoting <u>Padilla v. Kentucky</u>, 130 S.Ct. 1473, 1485 (2010)).

A state court's adjudication of an ineffectiveness claim is accorded great deference. "The standards created by <u>Strickland</u> and § 2254(d) are both 'highly deferential,' [<u>Strickland</u>], at 689, 104 S.Ct. 2052; <u>Lindh v. Murphy</u>, 521 U.S. 320, 333, n.7, 117 S.Ct.

8

2059, 138 L.Ed.2d 481 (1997), and when the two apply in tandem, review is 'doubly' so, Knowles[4], 556 U.S., at ----, 129 S.Ct. at 1420." Harrington, 131 S.Ct. at 788.

> The question "is not whether a federal court believes the state court's determination" under the Strickland standard "was incorrect but whether that determination was unreasonable - a substantially higher threshold." Schriro, supra, at 473, 127 S.Ct. 1933. And, because the Strickland standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard. See Yarborough v. Alvarado, 541 U.S. 652, 664, 124 S.Ct. 2140, 158 L.Ed.2d 938 (2004) ("[E]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations").

Knowles v. Mirzayance, 556 U.S. 111, 123 (2009); see also Rutherford v. Crosby, 385 F.3d 1300, 1309 (11th Cir. 2004) ("In addition to the deference to counsel's performance mandated by Strickland, the AEDPA adds another layer of deference--this one to a state court's decision--when we are considering whether to grant federal habeas relief from a state court's decision.").

### VII. Findings of Fact and Conclusions of Law

### A. Ground One

As ground one, Newsome asserts that the trial court erred when it admonished him in front of the jury and presented evidence to the jury. See Petition at 4 (quoting Tr. at 500). Petitioner

---

[4] Knowles v. Mirzayance, 556 U.S. 111 (2009).

9

raised this issue on direct appeal, <u>see</u> Resp. Ex. 14 at 19-24; the State filed an Answer Brief, <u>see</u> Resp. Ex. 15, and the appellate court affirmed Newsome's conviction and sentence per curiam without a written opinion concerning this issue, <u>see</u> <u>Newsome</u>, 967 So.2d 912; Resp. Ex. 16.  For purposes of analysis, the Court will assume that Newsome sufficiently exhausted the claim in state court and that the claim is properly before this Court.[5]

The State, in its appellate brief, addressed the claim on the merits.  <u>See</u> Resp. Ex. 15.  Thus, the appellate court may have affirmed Newsome's conviction based on the State's argument on the merits. If the appellate court addressed the merits, the state court's adjudication of this claim is entitled to deference under AEDPA.[6] After a thorough review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.  Thus, Newsome is not entitled to relief on the basis of this claim.

---

[5] <u>See</u> Response at 14-20.

[6] In <u>Harrington</u>, 131 S.Ct. at 785, the Court "h[eld] and reconfirm[ed] that § 2254(d) does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits.'"

Moreover, even assuming that the appellate court did not affirm Newsome's conviction on the merits or that the state court's adjudication of this claim is not entitled to deference, Newsome's claim, nevertheless, is without merit.  The following facts are relevant for resolution of the issue.  After State's witness Peggy Newsome (Newsome's wife) testified, defense counsel, outside the presence of the jury, stated:

> [DEFENSE COUNSEL]: Your Honor, in the interest of some future Judge and lawyer there was a particular line of questioning Mr. Newsome wished me to pursue with Mrs. Newsome relating to her health and to an intimately transmitted disease which Mr. Newsome believes that she contracted from a particular --
>
> THE COURT: What's the relevance of that?
>
> [DEFENSE COUNSEL]: He wanted me to inquire into that because he believed that it would prove a motive for framing based on romance. I do not believe that I was ethically in possession of sufficient information to justify my asking such a personal question which would expose the witness to embarrassment and ridicule. I made both a tactical and ethical decision understanding fully what Mr. Newsome wanted me to ask and why that [sic] it would not advance his cause and that it would be unethical and inappropriate to pursue that line of questioning.
>
> THE COURT: **And most importantly I would never have allowed that.**
>
> [DEFENSE COUNSEL]: I just want to make it clear that it's not -- I did not accidentally fail to pursue that line of questioning.
>
> THE COURT: I understand. All right.

Tr. at 323-24 (emphasis added).

After the State had rested its case and the defense announced that Newsome would testify, the judge questioned Newsome about counsels' representation. See id. at 450-53.

> THE COURT: All right. Mr. Newsome, I guess this is probably an appropriate point. There was the matter of the sexually transmitted disease question that Mr. Merrett [(defense counsel)] brought to my attention yesterday afternoon, which I think I've addressed for the record on that, but I want to pose to you at this point.
>
> To this moment, other than the matter that he talked about yesterday about the sexually transmitted disease [(STD)], and I happen to agree with him that I probably would never have permitted that anyway -- other than that, has everything gone to your satisfaction to this moment?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: Are you satisfied with the questions that Mr. Merrett and Mr. Carson [(defense counsel)] have put to the witnesses?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: Are you satisfied with the representation they've given you to this point?
>
> THE DEFENDANT: Yes, I am, sir.
>
> THE COURT: Is there anything that either one of them have done that you didn't want them to do?
>
> THE DEFENDANT: No, sir.
>
> THE COURT: Have they done everything that you wanted them to do?

THE DEFENDANT: Yes, sir.

THE COURT: Other than the matter of the STD, have they done everything that you wanted them to do?

THE DEFENDANT: Yes, sir.

Id. at 451-52.

Newsome affirmed that he suspected Leon Carr of adultery with Peggy Newsome, his wife.   Id. at 475.   After questioning from defense counsel and the prosecutor, the judge permitted the jurors to pose questions to Newsome.

THE COURT [(paraphrasing a jury question)]: Why did you accuse Mr. Carr of messing with your wife?

THE DEFENDANT: Because I found a letter. She told me to go get some medication one night when I got back home, because she was sick. And I was really worried about her and I was wondering why she came to the jail crying and asking me to forgive her.

So when I got home, she told me to go in her purse and get her some medication. So I went in there and I found the birth control pills. And I asked her, I said, "What are you doing with birth control pills? Your tubes are tied, and we had agreed for you not to have any more babies because you're anemic and I didn't want to lose my wife."

And then she said she was taking antibiotics.

So I happened to see this piece of paper and I opened it up and it said sexually transmitted disease. **And when I read it, it said AIDS [(Acquired Immunodeficiency Virus)]. So I questioned her about this.**

13

<u>Id</u>. at 499 (emphasis added).  When the trial judge, at a sidebar conference, inquired as to whether Peggy Newsome had AIDS, the prosecutor responded, "No."  <u>Id</u>. at 500.  Next, the trial judge instructed the jury as follows.

> **THE COURT: Members of the jury, you will disregard the last statement [Newsome] made. There is absolutely no evidence whatsoever that Ms. Newsome has AIDS, nor has she ever been treated for such a malady. I've already addressed this matter. Mr. Newsome is in violation of that order. You will disregard it.**

<u>Id</u>. (emphasis added).  Newsome apologized to the trial judge.  <u>Id</u>. At a following sidebar proceeding, defense counsel moved for a mistrial and objected "to the Court's admonition of Mr. Newsome as though he were an attorney . . . ."  <u>Id</u>. at 500-01.  The following colloquy ensued.

> [DEFENSE COUNSEL]: You just announced to the jury that Mr. Newsome is in violation of an order, which I believe is highly prejudicial.
>
> THE COURT: I presume you told him not to discuss that, since I told him right there in front of you on the record not to talk about it. I denied --
>
> [DEFENSE COUNSEL]: And then you asked him the question.
>
> THE COURT: I agreed with you in his presence that I would not permit it.
>
> [DEFENSE COUNSEL]: And then you asked the question.
>
> THE COURT: What question?

14

> [DEFENSE COUNSEL]: That's the honest
> answer. The answer is, "I thought she had an
> STD that the bishop had."

Id. at 501.  The court overruled counsel's objection and denied the

motion for mistrial.  Id.

After the trial judge asked additional jury questions, see id.

at 502, defense counsel resumed further redirect examination.

> [DEFENSE COUNSEL:] I want you to listen
> to me very carefully. I'm not asking whether
> or not it was true. Do you understand that?
>
> [DEFENDANT:]  Yes, sir.
>
> [DEFENSE COUNSEL:] Did you believe that
> your wife had contracted an STD from Bishop
> Carr?
>
> [DEFENDANT:]  Yes, sir.

Id. at 503.  On re-cross examination, the prosecutor inquired:

> [PROSECUTOR:] Sir, you just said that it
> was when you got back home that you found the
> letter, correct?
>
> [DEFENDANT:]  Yes, ma'am.
>
> [PROSECUTOR:] So you wouldn't have any
> knowledge to accuse her or accuse Bishop Carr
> while you were at Dick's Wings, then, would
> you?
>
> [DEFENDANT:] No, ma'am.

Id.

Viewing the court's instruction as a whole, this Court opines

that the trial judge did not err. He neither chastised nor

admonished Newsome. Rather, the trial judge explained to the jurors

that they were to disregard Newsome's "last statement" since the

court had previously addressed the matter with counsel and Newsome and there was no evidence that Peggy Newsome had AIDS or had been treated for such a malady.  See id. at 500.  Ground one does not warrant federal habeas relief.

### B. Ground Two

As ground two, Newsome asserts that the trial court erred when it denied his motion for new trial.  Newsome argued this issue on direct appeal, see Resp. Ex. 14 at 24-25; the State filed an Answer Brief, see Resp. Ex. 15, and the appellate court affirmed Newsome's conviction and sentence per curiam without a written opinion as to this issue, see Newsome, 967 So.2d 912.  To the extent that Newsome is raising, in ground two, the same claim he presented on direct appeal, the claim is sufficiently exhausted.

In its appellate brief, the State addressed the claim on the merits, see Resp. Ex. 15, and therefore, the appellate court may have affirmed Newsome's conviction based on the State's argument. If the appellate court addressed the merits, the state court's adjudication of this claim is entitled to deference under AEDPA. After a comprehensive review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law and did not involve an unreasonable application of clearly established federal law.  Nor was the state court's adjudication based on an unreasonable determination of the facts in light of the evidence

presented in the state court proceedings.  Accordingly, Newsome is not entitled to relief on the basis of this claim.

Even assuming that the state court's adjudication of this claim is not entitled to deference and that the claim presents a sufficiently exhausted issue of federal constitutional dimension,[7] Newsome's claim is still without merit.  At trial, A.N., who was sixteen years old at the time of trial, testified that Newsome (A.N.'s stepfather) "put his penis in [her] private part," Tr. at 151, and also engaged in rectal and oral sexual acts with her, see id. at 152-53.  She stated that Newsome told her and her sister he would kill them if they told anyone about the sexual encounters. Id. at 152.  As to the July 30, 2004 sexual battery, A.N. (who was fourteen years old at the time of the incident) testified that, after her mother fell asleep that night, Newsome asked A.N. if she was going to give him "some."  Id. at 154.  According to A.N., after Newsome took her into his office at the house, she performed oral sex on him, and then he placed his penis inside her vagina. Id. at 154-55.  She testified that she told Newsome that it hurt. Id. at 155.  A.N. stated that, while she and Newsome were in the office, she heard her mother's voice, and then her mother knocked on the door and tried to open it, but the door was locked.  Id. She testified that, when Newsome heard her mother's voice, he "was scared" and told A.N. to hurry and put on her pants.  Id. at 156.

_____

[7] See Response at 31-39.

According to A.N., Newsome told her mother that he thought A.N. was in the garage, but when her mother came back to the office and saw A.N. pulling up her pants, Newsome told her that nothing happened. Id. A.N. initially told Bishop Leon Carr that nothing had happened between her and Newsome because she was scared and nervous. Id. at 159.

T.N. (A.N.'s sister who was eighteen years old at the time of trial) testified that Newsome (her stepfather) told her that he was going to train or teach her "how older folks do it . . . ." Id. at 197. T.N. disclosed that Newsome "often" placed his penis inside her vagina. Id. at 197-98. According to T.N., these sexual acts would occur in Newsome's office at the house, and Newsome threatened to hurt them if she told anyone. Id. at 198. The last incident occurred when T.N. was sixteen years old. Id. at 199. T.N. initially told Bishop Leon Carr that Newsome did not molest her. Id. at 224.

Next, Peggy Newsome (Newsome's wife; the mother of the child victims) testified that, on the night of July 30, 2004, she woke up approximately 2:00 a.m. and noticed that A.N. was not in her bed. Id. at 236-38. According to Mrs. Newsome, she walked through the house looking for A.N., and as she walked past the office door, she heard A.N. say, "Daddy, that hurt." Id. at 238. Mrs. Newsome testified that she tried to open the door, but it was locked. Id. at 238-39. She described how she went to the other side of the

18

office from the bathroom and opened the door; she did not see A.N. Id. at 239.  Newsome told her that A.N. was in the garage, but when Mrs. Newsome later walked into the office, she saw A.N. standing near the closet wearing only a shirt and reaching for some pants. Id.  Mrs. Newsome testified that Newsome said he "just touched her."  Id. at 243.  Mrs. Newsome admitted that she did not call the police that night because Newsome said he was going to kill her. Id.  Nevertheless, on August 2, 2004, Mrs. Newsome reported the incident to law enforcement authorities.  Id. at 244-46.

Rusty Rogers, a former Detective with the Jacksonville Sheriff's Office, testified that he interviewed the child victims and Mrs. Newsome, and they gave him sufficient details for an arrest.  Id. at 310-11.  Rogers testified that Newsome cried for "probably two hours" while in custody, id. at 313, and said, "I'm sorry" multiple times, "[t]oo numerous to count."  Id. at 314. Rogers described Newsome's demeanor.

> He was rhythmic and he was repetitive over and over as he cried and sobbed.  A couple times he banged his head on the side of the window, not to hurt himself but kind of in a state of anguish is the way I interpreted it, and he would just say over and over I'm sorry.

Id. at 314.  Officer C. Robinson also testified that when he spoke with Mrs. Newsome on August 2, 2004, she expressed that her daughters had been sexually violated by their stepfather.  Id. at 339. According to Officer Robinson, Mrs. Newsome provided specific details of what she saw and heard.  Id. at 339-41.  He testified

19

that, upon completion of the interview, he contacted a sex crimes detective, his supervisor, and then contacted the Children's Crisis Center.  Id. at 342.

Next, Vicki Whitfield, a case coordinator with the Children's Crisis Center, also interviewed the child victims and Mrs. Newsome. Whitfield testified that A.N. had no difficulty describing what had happened to her and gave details of her sexual encounter on July 30, 2004, with Newsome, id. at 354-55, and that T.N., while embarrassed, still provided details of her sexual encounters with Newsome, id. at 358-59.  According to Whitfield, although A.N. was unable to state the specific number of sexual encounters she had with Newsome, she did state that the sexual encounters had occurred more than ten times.  Id. at 355.  Whitfield stated that T.N. also told her that sexual acts with her stepfather happened more than ten times.  Id. at 359.  As to Whitfield's interview of Mrs. Newsome, she testified that, while Mrs. Newsome "was still visibly upset and tearful," she was able to give a clear recitation of what had transpired on July 30, 2004, involving Newsome and A.N.  Id. at 362-63.

Bishop Leon Carr, Newsome's friend of fifteen years, was called as a key witness for the State.  Bishop Carr testified that he was a church pastor at Living Water Worship Center located at 8919 Lem Turner Road, and that Michael and Peggy Newsome attended his church until Newsome started a church of his own.  Id. at 396-

99.  He stated that he had known Newsome's stepdaughters since they were eight or nine years old.  <u>Id</u>. at 401.  According to Carr, after learning of Newsome's arrest from another pastor, he "was somewhat confused because [he] couldn't believe that Michael would do something like this."  <u>Id</u>. at 402.  Carr repeatedly questioned Newsome's stepdaughters as well as Mrs. Newsome because he did not believe that Newsome could have committed such acts.  <u>Id</u>. at 405.

Bishop Carr also testified that he and Mrs. Newsome went to the jail to pick up Newsome on February 28, 2005, the day of Newsome's release due to the victims' recantations.  <u>Id</u>. at 409-10. According to Carr, the three of them went to lunch and, outside the presence of Mrs. Newsome, Bishop Carr told Newsome that he had heard from A.N. that Newsome had asked if anything was going on between Mrs. Newsome and Carr.  <u>Id</u>. at 415.  Carr testified that he addressed the matter with Newsome, and the following conversation ensued.

> So I said, "Michael."  I said, "I want to tell you right now I have not been with your wife.  If you're accusing me of being with your wife, I have not been with Peggy."  I said, "Michael, as a matter of fact," I said, "I'm sexually impotent."  I said, "I cannot have sex, and I have not for over a year been sexually involved with anybody."  And I said, "So I can't do that."
>
> So he kind of like, "Hmm.  Okay.  Since we're on this confession, yeah, I did it.  I F'd both of them little bitches."
>
> And I said, "What?"

> He said, "Yeah, I F'd both of them little
> bitches."  He said, "And they wasn't all that
> great.  They enjoyed it."
>
> And I just looked at him with my mouth
> open.  I'm like, "Oh, God."  And I just stared
> at him, because I didn't know what to say from
> that point.  And I said, "Okay.  Let's go."

Id. at 416; see also id. at 421-22.  Bishop Carr acknowledged that he had just spent the prior six months trying to convince law enforcement to release Newsome and "had put [his] reputation on the line" in doing so.  Id. at 416-17.  He conceded that Newsome had manipulated him "a great deal."  Id. at 417.

After Newsome testified on his own behalf, see id. at 457-504, and upon the completion of closing arguments, the trial judge sent the jurors home for the evening and told them to return in the morning for final instructions.  See Tr. at 610-11.  The following morning, outside the presence of the jury, defense counsel voiced his concerns to the court.

> [DEFENSE COUNSEL]: Your Honor, last night
> I attempted to contact Bishop Carr by
> telephone and was able to leave a message with
> a relative of his but was not able to reach
> him personally.
>
> I then attempted to telephone a place
> called Living Water Worship Center.  The
> telephone number, according to the
> information, had been changed.  The new number
> that was given was disconnected.
>
> Early this morning I drove out to the
> address that he gave as the address of Living
> Water Worship Center and found that there is
> no such church.  What is located at that
> address is a church called Well of Water

22

Worship Center, Inc.  The pastor is listed on
the signage of the church as Kelvin Brigman.
His name came up here in testimony during the
trial, and on the signage of the church the
legend founder and senior pastor appears, but
the name above it has been whited out on all
of the signage.

Essentially, what I discovered is that
there is no such church as the church the man
claims to exercise episcopal authority over
and that it appears that he has for whatever
reason left or been dismissed, contrary to his
testimony that he is the bishop of that
nonexistent church.  And I am asking the Court
to allow a recess to allow me to issue a
subpoena and lay hands on Bishop Carr and have
him brought back to reopen cross-examination
regarding what I believe to be his perjury
regarding his status as a man of the cloth.

THE COURT: Mr. Merritt [sic], you said
someone's name has been painted over?

[DEFENSE COUNSEL]: Yes, sir.

THE COURT: Could you tell whose name it
was that had been painted over?

[DEFENSE COUNSEL]: I cannot tell, Your
Honor.  It was painted over heavily.

THE COURT: So if he is not the pastor of
the church but he said he was the bishop, what
is the -- where is the falsehood if he comes
in and says he was the bishop?

[DEFENSE COUNSEL]: For one thing that is
not the church, and I think that if you ask
Bishop Howard what he is bishop of, he is not
going to say the African Methodist Episcopal
Church.  He is going to say the Episcopal
Diocese of Florida.  The man named a
nonexistent church and gave an address where
there is a church which is not the one of
which he claims to be bishop.

THE COURT: And let me make sure. The Bishop's name was disclosed when, Ms. Rommel?

[THE PROSECUTOR]: Actually, he was listed as a defense witness originally.

[DEFENSE COUNSEL]: He did appear and [the] state furnished discovery months in advance of trial, Your Honor, and he was deposed by the public defender months in advance of trial.

THE COURT: **Well, Mr. Merritt [sic], with all due respect, I think that is entirely too collateral for all of this, and so that request is denied.**

Id. at 617-19 (emphasis added).

Next, defense counsel filed a motion for new trial, in which he asserted that he discovered, after the close of the evidence at trial, that the church where Leon Carr claimed to be bishop:  (1) does not exist; (2) removed Carr's name from its signage; and (3) defrocked and ousted Carr from his position, just months before trial. See Resp. Ex. 10, Motion for New Trial, filed May 11, 2006. Defense counsel also stated that he interviewed Kenneth Brigman, the pastor, who confirmed that the church had defrocked and ousted Carr and had removed his name from its signage. Id. at 196. However, according to defense counsel, for confidentiality reasons, Brigman refused to disclose why the church took such actions. Id. at 197. Counsel also asserted that other witnesses presumably having information relating to Carr's dissociation from the church declined to communicate with counsel. Id. Thus, defense counsel concluded that, since Carr "was the source of the only purported

24

confession admitted at trial," and it appeared that Carr had perjured himself, Newsome should be granted post-trial discovery, an evidentiary hearing on the motion, and a new trial. Id.

Upon hearing argument from defense counsel and the prosecutor, see Resp. Ex. 11, Transcript of the Sentencing Proceeding (Sentencing Tr.), at 269-77, the court denied the motion for new trial on May 11, 2006, id. at 277. Newsome's motion for new trial was presumably premised on Florida Rule of Criminal Procedure 3.600(a), which provides, in pertinent part:

> The court shall grant a new trial if any of the following grounds is established.
>
>     (1) The jurors decided the verdict by lot.
>
>     (2) The verdict is contrary to law or the weight of the evidence.
>
>     (3) **New and material evidence, which, if introduced at the trial would probably have changed the verdict or finding of the court, and which the defendant could not with reasonable diligence have discovered and produced at the trial, has been discovered.**

Fla. R. Crim. P. 3.600(a) (emphasis added).

Based on the trial judge's questions and comments during the hearing on the motion, see Sentencing Tr. at 269, 271-72, 275, 277, he was cognizant of the standard of review and what the defense was required to establish to be entitled to a new trial. Additionally, the court was aware that the defense had listed Bishop Carr as a defense witness, and that the assistant public defender had deposed

25

Carr months in advance of trial.  <u>See</u> Tr. at 619.  Thus, the trial
judge reasoned that it was not newly-discovered material evidence
that probably would have changed the verdict, <u>see</u> Sentencing Tr. at
271-72, 275, 276-77, and that defense counsel knew about Bishop
Carr's testimony months prior to trial, and therefore there was no
basis to delay the trial to reopen cross-examination, <u>see</u> Tr. at
619, nor any reason to grant a new trial, <u>see</u> Sentencing Tr. at
275. Accordingly, on this record, including the State's compelling
evidence against Newsome,[8] the trial court did not abuse its
discretion when it denied the motion for new trial.  <u>See</u> Sentencing
Tr. at 269-77; Resp. Ex. 15 at 24-33. Thus, Newsome's ground two
does not warrant federal habeas relief.

## C. Ground Three

     As ground three, Newsome asserts that counsel (Rhonda Waters,
Dale Carson and John Merrett) were ineffective because they failed
to file a motion to dismiss the Amended Information after the
original Information "was dismissed with prejudice . . . ."
Petition at 8.  Newsome raised the ineffectiveness claim in his
Rule 3.850 motion.  Resp. Ex. 17. The trial court denied the Rule
3.850 motion with respect to this issue, stating in pertinent part:

---

     [8] As previously set forth, the testimony of the two child
victims was sufficient to convict Newsome of two counts of sexual
battery upon a child by a person in familial or custodial
authority. Additionally, Peggy Newsome's testimony corroborated the
victims' testimony.

> In his first ground[,] the defendant
> contends that his attorneys were ineffective
> because they failed to moot or dismiss the
> second information after the original
> information was dismissed with prejudice.
> However, the defendant's assertion that the
> original information was dismissed with
> prejudice is inconsistent with the record in
> this cause.  Attached herewith as Exhibit A is
> this Court's (the Honorable John H. Skinner)
> order granting the motion to dismiss without
> prejudice and [sic] filed on March 8, 2005.[9]
>
> . . . .
>
> In sum, the Court finds that the
> defendant has failed to show that counsel's
> performance was below standard.  He has also
> failed to show that any of his issues would
> have effected a change in the outcome of his
> trial.

Resp. Ex. 18 at 62, 65.  On appeal, Newsome filed a pro se brief,

see Resp. Ex. 20, and the State notified the court that it did not

intend to file an answer brief, see Resp. Ex. 21.  The appellate

court affirmed the trial court's denial per curiam.  Newsome, 36

So.3d 89; Resp. Ex. 22.

Given the record in the instant action, the appellate court

may have affirmed the denial of Newsome's motion for post

conviction relief on the merits. If the appellate court addressed

the merits, the state courts' adjudications of this claim are

entitled to deference under AEDPA. After an extensive review of the

record and the applicable law, the Court concludes that the state

---

[9] See Resp. Ex. 6, Order Granting Motion to Dismiss Without
Prejudice, filed March 8, 2005, nunc pro tunc to February 24, 2005;
see also Pet. Ex. C at 12, 13.

courts' adjudications of this claim were not contrary to clearly established federal law and did not involve an unreasonable application of clearly established federal law. Nor were the state court adjudications based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Newsome is not entitled to relief on the basis of this claim.

Even assuming that the appellate court did not affirm the denial of the Rule 3.850 motion on the merits or that the state courts' adjudications of this claim are not entitled to deference under AEDPA, Newsome's claim is still without merit because the trial court's conclusion that counsel was not ineffective is fully supported by the record. In evaluating the performance prong of the Strickland ineffectiveness inquiry, there is a strong presumption in favor of competence. The presumption that counsel's performance was reasonable is even stronger when, as in this case, defense counsel Mr. John Merrett is an experienced criminal defense attorney.[10]  The inquiry is "whether, in light of all the

---

[10] "When courts are examining the performance of an experienced trial counsel, the presumption that his conduct was reasonable is even stronger." Chandler v. United States, 218 F.3d 1305, 1316 (11th Cir. 2000) (en banc); Williams v. Head, 185 F.3d 1223, 1229 (11th Cir. 1999) (noting that "[i]t matters to our analysis" whether the attorney is an experienced criminal defense attorney). John Matthew Merrett was admitted to the Florida Bar in 1988. See http://www.floridabar.org. At Newsome's March 2006 trial, the trial judge stated: "Because I've presided over trials in which you've been counsel before, Mr. Merrett, on a number of occasions. Your fame and experience precedes you." Tr. at 328. At that time,

circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." Strickland, 466 U.S. at 690.  "[H]indsight is discounted by pegging adequacy to 'counsel's perspective at the time' . . . and by giving a 'heavy measure of deference to counsel's judgments.'" Rompilla v. Beard, 545 U.S. 374, 381 (2005) (citations omitted).  Thus, Newsome must establish that no competent attorney would have taken the action that counsel, here, chose.

Indeed, the test for ineffectiveness is neither whether counsel could have done more nor whether the best criminal defense attorneys might have done more; in retrospect, one may always identify shortcomings. Waters v. Thomas, 46 F.3d 1506, 1514 (11th Cir. 1995) (stating that "perfection is not the standard of effective assistance") (quotations omitted). Instead, the test is whether what counsel did was within the wide range of reasonable professional assistance. Ward v. Hall, 592 F.3d at 1164 (quotations and citation omitted); Dingle v. Sec'y for Dep't of Corr., 480 F.3d 1092, 1099 (11th Cir. 2007) ("The question is whether some reasonable lawyer at the trial could have acted as defense counsel acted in the trial at issue and not what 'most good lawyers' would have done.") (citation omitted). Newsome failed to carry this burden.

---

Merrett had been practicing law for over eighteen years.

Given the record, in this case, counsels' performance was well within the wide range of professionally competent assistance.  Even assuming arguendo deficient performance by defense counsel, Newsome has not shown prejudice. Given the State's compelling evidence against him and the fact that the original Information had been dismissed without prejudice, and not with prejudice, Newsome has not shown that a reasonable probability exists that the outcome of the case would have been different if counsel had filed a motion to dismiss the Amended Information. See Resp. Exs. 3; 5; 6.  Newsome's ineffectiveness claim fails because he has shown neither deficient performance nor resulting prejudice.

### D. Ground Four

As ground four, Newsome asserts that counsel (John Merrett and Dale Carson) were ineffective because they failed to object to Assistant State Attorney Khary Gaynor testifying at trial. Newsome raised the ineffectiveness claim in his Rule 3.850 motion, as ground four.   The trial court ultimately denied the Rule 3.850 motion with respect to this issue, stating:

> In his fourth ground[,] the defendant complains that trial counsel failed to object to the State's calling an Assistant State Attorney.  The defendant contends that the mere fact that a prosecutor was called was prejudicial.  The Assistant State Attorney who had interviewed the wife, the step-daughters, and the bishop was called. His testimony was in response to a withering cross-examination and defense counsel's effort to show that [the] wife and step-daughters were nothing but liars.  It is noted that the

> testifying Assistant was not the assigned
> prosecutor at trial and had nothing to do with
> the case after the charges against the
> defendant were refiled. The defendant has
> failed to show any reason for relief as to
> this claim.

Resp. Ex. 18 at 63. Upon Newsome's appeal, the appellate court affirmed the denial per curiam.

Given the record in the instant action, the appellate court may have affirmed the denial of Newsome's motion for post conviction relief on the merits. If the appellate court addressed the merits, the state courts' adjudications of this claim are entitled to deference under AEDPA. After a review of the record and the applicable law, the Court concludes that the state courts' adjudications of this claim were not contrary to clearly established federal law and did not involve an unreasonable application of clearly established federal law. Nor were the state court adjudications based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Newsome is not entitled to relief on the basis of this claim.

Even assuming that the appellate court did not affirm the denial of the Rule 3.850 motion on the merits or that the state courts' adjudications of this claim are not entitled to deference under AEDPA, Newsome's claim is still without merit because the trial court's conclusion is supported by the record. Indeed, counsels' performance was within the wide range of professionally

31

competent assistance. Newsome's defense theory centered upon the argument that the government, led by Assistant State Attorney Khary Gaynor, wanted to obtain a conviction regardless of the fact that the step-daughters and Peggy Newsome initially recanted. See Tr. at 145-47. Upon cross examination, defense counsel wanted to convince the jury that Peggy Newsome and the child victims were not credible witnesses. Thus, as its last witness, the State called Khary Gaynor to testify regarding the circumstances of the initial dismissal of the charges and later refiling of the Amended Information. See id. at 432-45. Given the defense theory and cross-examinations of Peggy Newsome and the child victims, there would have been little basis to object to the State's calling Gaynor as a witness. Moreover, as previously set forth, and as relied upon by the post conviction court, see Resp. Ex. 18 at 65, after the State rested, Newsome voiced his satisfaction with defense counsel and affirmed that counsel had done everything he wanted them to do. See Tr. at 452. Even assuming arguendo deficient performance by defense counsel, Newsome has not shown prejudice. He has not shown that a reasonable probability exists that the outcome of the case would have been different if counsel had objected to Assistant State Attorney Khary Gaynor testifying at trial. Therefore, Newsome's ineffectiveness claim is without merit since he has shown neither deficient performance nor resulting prejudice.

32

### E. Ground Five

As ground five, Newsome asserts that counsel were ineffective because they failed to object when the prosecutor questioned him about a prior arrest for child abuse. Newsome raised the ineffectiveness claim in his Rule 3.850 motion. The trial court ultimately denied the Rule 3.850 motion concerning this issue, stating:

> In his sixth ground[,] the defendant contends that his attorneys failed to object to the jury learning of a prior arrest of the defendant. However, the jury learned of the prior arrest because the defendant claimed a <u>lack</u> of arrest during his testimony on direct. In brief summary, the defendant suggested that he didn't know what was happening when he was being arrested as he had never been arrested before.[11]  Defense counsel had the presence of mind to have the defendant recall that he had actually been arrested on a driver's license charge, but the defendant then said that there were no other arrests.[12] The State asked for, and was granted, permission to ask the defendant about a child abuse arrest which he had forgotten to mention to the jury.[13] See trial transcript lines 1, page 473 through line 12, page 477 and line 10, page 496 through line 3, page 498 attached hereto as Exhibit D. The defendant has failed to establish anything in support of this claim.

Resp. Ex. 18 at 63-64.  On Newsome's appeal, the appellate court affirmed the denial per curiam.

---

[11] <u>See</u> Tr. at 473.

[12] <u>See</u> Tr. at 474.

[13] <u>See</u> Tr. at 476-77, 496-98.

Assuming the appellate court affirmed the denial on the merits, there are qualifying state court decisions. Thus, the Court considers this claim in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state courts' adjudications of this claim were not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and were not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Newsome is not entitled to relief on the basis of this claim.

Moreover, even assuming the state courts' adjudications of this claim are not entitled to deference, Newsome's ineffectiveness claim is without merit because the trial court's conclusion is fully supported by the record. On this record, counsels' performance was within the wide range of professionally competent assistance. Even assuming arguendo deficient performance by defense counsel, Newsome has not shown prejudice. Given the State's convincing evidence against him, Newsome has not shown that a reasonable probability exists that the outcome of the case would have been different if counsel had objected, especially since the prosecutor requested, and was granted, permission to ask Newsome about a child abuse arrest, which he had forgotten to mention on direct examination. See Tr. at 476-77, 496. Newsome's

ineffectiveness claim fails because he has shown neither deficient performance nor resulting prejudice.

## VIII. Certificate of Appealability
## Pursuant to 28 U.S.C. § 2253(c)(1)

If Newsome seeks issuance of a certificate of appealability, the undersigned opines that a certificate of appealability is not warranted.  This Court should issue a certificate of appealability only if the petitioner makes "a substantial showing of the denial of a constitutional right."  28 U.S.C. §2253(c)(2).  To make this substantial showing, Newsome "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)).

Where a district court has rejected a petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.  See Slack, 529 U.S. at 484.  However, when the district court has rejected a claim on procedural grounds, the petitioner must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional

35

right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Id. Upon consideration of the record as a whole, this Court will deny a certificate of appealability.

Therefore, it is now

**ORDERED AND ADJUDGED:**

1.    The Petition (Doc. #8) is **DENIED**, and this action is **DISMISSED WITH PREJUDICE**.

2.    The Clerk of the Court shall enter judgment denying the Petition and dismissing this case with prejudice.

3.    If Newsome appeals the denial of the Petition, the Court denies a certificate of appealability.  Because this Court has determined that a certificate of appealability is not warranted, the **Clerk** shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case.  Such termination shall serve as a denial of the motion.

4.    The Clerk of the Court shall close this case.

**DONE AND ORDERED** at Jacksonville, Florida, this 15th day of January, 2014.

**MARCIA MORALES HOWARD**
United States District Judge

36

```
sc 1/14
c:
Michael Owen Newsome
Ass't Attorney General (Jordan)
```